I disagree with the trial court's judgment in this case in the following respects:
 1. A provision of the lease agreement states that demolition or structural alterations require the written consent of the lessor "[d]uring the last five (5) years of the primary term hereof and any extension hereof." (Emphasis added.) As I read it, the plain meaning of this language is that the lessor's consent is required both during the last 5 years of the initial, 25-year term of the lease agreement and during any and all extensions of that term — not just during the last 5 years of a period consisting of multiple extensions.[5]
Moreover, the *Page 691 
quoted passage from the lease agreement must be read in pari materia with the earlier provision of the lease agreement stating that "Lessees, without the written consent of the Lessors . . ., shall, during the first twenty (20) years of the primary term of this lease, have the right to tear down or materially demolish any improvements made by the Lessees on the leased property, or make any . . . alterations in such improvements." (Emphasis added.)
 2. If, however, as the trial court held, the lease agreement did not require the consent of the lessor during the period in question, how could the lessor be contractually liable for failing to give that consent? Likewise, if the lessor's consent was not required by the lease agreement, how could the failure to give that consent provide the basis for a claim of interference with a contractual relationship?
 3. I question the authority of the trial court to structure a monthly additur to its damages award in the event of an appeal.
Because the concerns expressed in paragraphs 2 and 3 are not argued to this Court with citations to legal authority, I concur in the result.
[5] It just happened in this case that the lessee had purportedly exercised several of its lease extensions at once, thereby adding an additional block of greater than five years to the end of the initial term of the lease and allowing the trial court's interpretation room for operation that it otherwise would not have had. I also note that there is language elsewhere in the lease agreement that arguably contemplates the exercise of extensions, one at a time, at the end of the primary term and of each successive extension term of the lease agreement.